JOSEPH H. HUNT
Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

BENJAMIN T. TAKEMOTO
(DC Bar # 1045253)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| OLIVER BRUCE MORRIS,<br><br>     Plaintiff,<br><br>  v.<br><br>MICHAEL R. POMPEO, *in his official capacity as Secretary of State*,<br><br>     Defendant. | Case No. 2:19-cv-00569-GMN-CWH<br><br>**DEFENDANT'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES** |

# TABLE OF CONTENTS

DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT .................1

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES.................................1

BACKGROUND .................................................................................2

I.      Statutory and Regulatory Background.................................................2

II.     The Department's Decision to Deny Plaintiff's Passport Application ...........................6

III.    Procedural History .................................................................7

LEGAL STANDARD.................................................................................7

ARGUMENT .................................................................................8

I.      Defendant is Entitled to Judgment as a Matter of Law Regarding Plaintiff's APA Claims. .................................................................................9

        A.      Count I Should Be Dismissed Because the Department's Decision to Deny Plaintiff's Passport Application Was Reasonable, Not Arbitrary or Capricious. ...............9

        B.      Count II Should Be Dismissed Because the Department's Decision to Deny Plaintiff's Passport Application Was Well Within Its Statutory Authority.....................11

II.     Count III Should Be Dismissed Because Plaintiff Has Failed to State a Due Process or Equal Protection Claim. .................................................................................12

        A.      The Court Should Dismiss Plaintiff's Equal Protection Claim Because Plaintiff Has Not Plausibly Alleged That the Department Denied His Passport Application with an Intent to Discriminate against Transgender People. ........................12

        B.      In the Alternative, if the Court Reaches Plaintiff's Constitutional Claims, It Should Apply Rational Basis Review.................................................15

                1.      Rational Basis Review Applies to Plaintiff's Due Process Claim Because No Fundamental Right Is at Issue in this Case........................15

                        i.      There Is No Fundamental Right at Issue Here Concerning an Infringement on the Refusal of Medical Treatment................................16

                        i.      There Is No Fundamental Right at Issue Here Concerning an Infringement on Personal Decision Making. ................................18

                2.      Rational Basis Review Should Also Apply to Plaintiff's Equal Protection Claim.. .................................................19

        C.      The Department's Decision to Deny Plaintiff's Passport Application Satisfies Rational Basis or, in the Alternative, Heightened Scrutiny. ................................19

CONCLUSION.................................................................................22

CERTIFICATE OF SERVICE .................................................................24

**Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A.,** *Morris v. Pompeo*, No. 19-0569

i

**DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**

Defendant Michael R. Pompeo, in his official capacity as Secretary of State, hereby files this Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Motion for Summary Judgment pursuant to Rule 56(a) (collectively, Motion). Defendant's Motion is based on the accompanying Memorandum of Points and Authorities; the Administrative Record, ECF No. 20; the Court's files and records in this action; Plaintiff Oliver Bruce Morris's Amended Complaint, ECF No. 13; any matter that may be judicially noticed; and any other matter that the Court may consider at any oral argument that may be presented in support of this Motion. Pursuant to the Court's Order of July 29, 2018, Plaintiff's opposition and cross-dispositive motion must be filed forty-five days after this motion, Defendant's reply and opposition thirty days thereafter, and Plaintiff's reply fourteen days thereafter. *See* ECF No. 19

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff challenges a decision by the United States Department of State (Department) to deny his passport application on the ground that he did not adhere to established policy for reflecting a change in sex on the passport. The Court should dismiss this case on several grounds, set forth below.

Plaintiff, who indicated on his passport application that he was male, submitted as proof of identity a birth certificate that identified his sex as female. Under Department policy, individuals who have undergone a gender transition may obtain a passport designating a sex that differs from the sex designated on their birth documentation upon presentation of an appropriate medical certification. But, as with all aspects of an applicant's identity, such as name or date of birth, an applicant's sex designation must be independently verified. Applicants who request a sex designation that differs from that on their birth documentation must submit a certification from their physician that the applicant has had "appropriate clinical treatment for gender transition to the new gender of either male or female" or is "in the process" of such transition. The Department informed Plaintiff three times that he could obtain a passport designating his requested sex (male) if he submitted the necessary certification. Plaintiff declined to do so, and instead challenges this requirement as contrary to both the Administrative Procedure Act (APA) and the Constitution. Plaintiff may still obtain a passport with a male sex designation if he chooses. But the Court may not vacate the Department's decision under these theories.

The first of Plaintiff's theories, that the Department's decision was arbitrary and capricious and in excess of statutory authority, is meritless. The APA requires no more of agencies than to make decisions reasonably based on the facts in front of them. The Department has fully complied with this standard, declining to issue a passport where the applicant requested a passport designating a sex that differed from the sex listed on his birth documentation, but declined to supply the evidence required under Department procedures to be issued a passport with that designated sex. It is unquestionable that the Department has statutory authority under 22 U.S.C. § 211a to deny a passport application when there is insufficient evidence of the applicant's identity, and the Department's requirement that a gender transition be evidenced by a physician's certification is rational, lawful, and neither arbitrary nor capricious.

Plaintiff's contention that the Department's decision was unconstitutional because it unfairly infringes his due process and equal protection rights should also be dismissed. The Department neither impermissibly discriminated against Plaintiff nor violated any fundamental right in denying his passport application. Plaintiff is able to get a passport designating his requested sex under Department policy; he need only provide evidence sufficient to establish his identity, as must any applicant for a U.S. passport. And even if the Court were to apply equal protection principles to this claim, under the limited rational basis review applicable here, the Department has provided a more than "conceivable basis," *Dittman v. California*, 191 F.3d 1020, 1031 (9th Cir. 1999), to deny the passport: Plaintiff did not submit evidence that independently verified his identity pursuant to longstanding Department policies.

## BACKGROUND

### I.    Statutory and Regulatory Background

A passport serves both as a travel document and a diplomatic "letter of introduction in which the issuing sovereign vouches for the bearer and requests other sovereigns to aid the bearer." *Haig v. Agee*, 453 U.S. 280, 292 (1981); *see* 22 C.F.R. § 51.1 (defining "Passport" as "a travel document regardless of format issued under the authority of the Secretary of State attesting to the identity and nationality of the bearer"). Accordingly, as the Supreme Court has long recognized, "a passport 'from its nature and object . . . is to be considered . . . in the character of a political document.'" *Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2095 (2015) (quoting *Urtetiqui v. D'Arcy*, 34 U.S. (9 Pet.) 692, 699 (1835)).

In light of the President's "unique role in communicating with foreign governments," *id.* at 2090,

Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A., *Morris v. Pompeo*, No. 19-0569

2

Congress has given the Executive Branch broad authority to regulate the contents of passports and the conditions for issuing them. *Zemel v. Rusk*, 381 U.S. 1, 12 (1965). Namely, the Passport Act, 22 U.S.C. § 211a, was enacted to "centralize passport authority in the Federal Government." *Agee*, 453 U.S. at 294. Recognizing that the passport authority is "necessarily incident to" the Department of State's "general authority to conduct the foreign affairs of the United States under the Chief Executive," Congress adopted "broad and permissive" language concerning the Executive's regulation of passports." *Id.* at 294–95. The Passport Act provides, "The Secretary of State may grant and issue passports . . . under such rules as the President shall designate and prescribe for and on behalf of the United States." 22 U.S.C. § 211a. The President delegated this authority to prescribe rules for the issuance of passports to the Secretary of State, Exec. Order No. 11295, 31 Fed. Reg. 10,603 (Aug. 9, 1966), who in turn promulgated detailed regulations governing passports and their content, *see* 22 C.F.R. §§ 51.1–51.74.

To assure that the United States accurately "vouches for the bearer" of every passport that it issues, *see Agee*, 453 U.S. at 292, Department regulations provide, "The applicant has the burden of establishing his or her identity . . . by the submission of a previous passport, other state, local, or federal government officially issued identification with photograph, or other identifying evidence which may include an affidavit of an identifying witness." *Id.* § 51.23(a)–(b). In addition, "[t]he Department may require such additional evidence of identity as it deems necessary." *Id.* § 51.23(c). Since the 1970s, the Department has required passports to contain a specific sex designation of male or female.

In 2010, the Department adopted a new policy for certain applicants who seek a passport with a sex designation that differs from that listed on the government identification document submitted as part of the passport application. *See* A.R. 33–41, *see also* A.R. 42. Under the 2010 policy, an applicant could obtain a passport with a sex designation different from the one reflected on the submitted citizenship or identity evidence "upon presentation of a certification, done under penalty of perjury, from the attending medical physician . . . that the applicant has had appropriate clinical treatment for gender transition" or "is in the process of gender transition." Action Memo for Assistant Secretary Jacobs (May 14, 2010), A.R. 31; *see also* A.R. 33–41. This policy eliminated the previous requirement that an applicant undergo sex reassignment surgery in order to obtain a passport with a new sex designation and established that the applicant need not submit any medical documentation of his or her transition other than the required

Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A., *Morris v. Pompeo*, No. 19-0569

3

physician's certification. A.R. 34. In developing this policy, the Department relied on the recommendations of the World Professional Association for Transgender Health (WPATH), which the American Medical Association recognizes as an authority in transgender health. *See* Action Memo for Assistant Secretary Jacobs (May 14, 2010), A.R. 31; *see also* WPATH, STANDARDS OF CARE (6th version Feb. 2001), A.R. 43–64 [hereinafter SOC]. Those recommendations, which "articulate [WPATH's] professional consensus about the psychiatric, psychological, medical, and surgical management of gender identity disorders," SOC 1, A.R. 43, recognize that medical professionals play a significant role in the care of individuals with gender identity disorders. "Professional involvement with patients with gender identity disorders involves any of the following: diagnostic assessment, psychotherapy, real-life experience, hormone therapy, and surgical therapy." *Id.* at 3, A.R. 45. Accordingly, the Department determined that an applicant's physician would be a reliable source to verify the applicant's sex designation in cases where the applicant had undergone a gender transition. *Cf.* Letter from Brenda S. Sprague, Deputy Assistant Sec'y for Passport Serv., Dep't of State, to Harper Jean Tobin, Dir. Of Policy, Nat'l Ctr. for Transgender Equal. 2 (Dec. 30, 2013), A.R. 86 (explaining that "[w]hen the Department pioneered [its] new policy regarding gender change in passports," it recognized the importance of relying on a verified physician) [hereinafter Dec. 30, 2013 Letter]. In addition to the SOC, the Department considered concerns raised by Ambassador Michael Guest and the Council for Global Equality. *See id.* at 32; *see also* Information Memo for Assistant Secretary Jacobs (Mar. 4, 2010), A.R. 65–67 (describing a meeting with the Council for Global Equality).

Since developing this new policy, the Department has made certain changes in response to comments from transgender community advocates, including the Council for Global Equality, the National Center for Lesbian Rights, the National Center for Transgender Equality, and the National Gay and Lesbian Task Force. For example, in 2010 the Department expanded the type of physicians who are authorized to prepare the certification. *See* A.R. 70–80; *see also* Action Memo for Assistant Secretary Jacobs (Dec. 8, 2010), A.R. 68–69 (describing changes to the 2010 policy). And, in 2013 the Department eliminated the requirement that the certifying physician provide their Drug Enforcement Agency registration number. Action Memorandum for DAS Sprague (Dec. 30, 2013), A.R. 84; *see also* Dec. 30, 2013 Letter 2, A.R. 85.

At present, the Department's passport policy permits "an applicant [who] indicates a gender on the 'sex' line on the passport application with information different from the one reflected on some or all of the submitted citizenship and/or identity evidence, including a prior passport" to obtain a passport under certain conditions. 8 FAM 403.3-1(a), A.R. 106. "As with all applications, the applicant must be asked to submit acceptable Identification Document(s) (IDs) in the new gender, and name, if applicable." 8 FAM 403.3-2(A)(b), A.R. 107. In addition, the applicant must present "a signed, original certification or statement, on office letterhead, from a licensed physician who has treated the applicant for her/his gender-related care or reviewed and evaluated the gender-related medical history of the applicant." 8 FAM 403.3-2(B)(a), A.R. 108; *see also* 8 FAM 403.3-8, at A.R. 114 (providing a model certification). That certification must include the physician's full name, medical license or certificate number, address, and telephone number. 8 FAM 403.3-2(B)(d)(1)–(3), A.R. 108–09. In addition, the certification must contain language stating that (1) the physician "has treated the applicant or has reviewed and evaluated the medical history of the applicant and that she/he has a doctor/patient relationship with the applicant"; (2) "the applicant has had appropriate clinical treatment for gender transition to the new gender of either male or female"; and (3) the certification is submitted under penalty of perjury. *See* 8 FAM 403.3-2(B)(d)(4)–(6), A.R. 109. Of note, "[s]ex reassignment surgery is not a prerequisite for passport issuance based on gender change." 8 FAM 403.3-1(d), A.R. 106. On the contrary, "[m]edical certification of gender transition from a licensed physician as described in 8 FAM 403.3-2 is the only documentation of gender change required. Other medical records must not be requested." 8 FAM 403.3-1(e), A.R. 106.

Some comments that the Department has received from transgender community advocates overlap with the relief that Plaintiff seeks in this litigation. For example, the National Center for Transgender Equality has recommended that "[t]he Department . . . revise the current policy to accept government-issued documents recognizing the new gender as an alternative form of acceptable evidence of gender change, including, at a minimum, amended birth certificates, court orders, and naturalization certificates." Letter from Harper Jean Tobin, Dir. Of Policy, Nat'l Ctr. for Transgender Equal, to Brenda S. Sprague, Deputy Assistant Sec'y for Passport Serv., Dep't of State 5 (Sep. 9, 2013), A.R. 91. After careful consideration of this recommendation, the Department declined to adopt it. The Department explained that "many amended birth certificates do not indicate what information was changed and an amended

change (such as a change in a date of birth, place of birth or parents' information) may affect the bearer's entitlement to a U.S. passport or ability to transmit U.S. citizenship derivatively to a child." Dec. 30, 2013 Letter 1, A.R. 85. The Department also reasoned, "because of the different laws and regulations in place for each state, if [the Department] accepted only an amended birth certificate for gender transition purposes or a court order, [the Department] would be forced to accept vital records amended by states using evidence the Department would not accept otherwise." *Id.* By uniformly requiring all applicants for a passport containing a sex designation different from that on their birth documents to submit a physician's certification—and only a physician's certification—the Department's policy ensures that the evidence necessary to issue a passport designating a sex that differs from the applicant's birth documentation is consistent for all applicants.

## II.    The Department's Decision to Deny Plaintiff's Passport Application

On October 9, 2018, Plaintiff submitted an application for a U.S. passport card. A.R. 1.[1] Although the application specified Plaintiff's sex as male, A.R. 1, Plaintiff included with the application a California birth certificate in the name "Chanesse Olivia Morris" with the sex listed as female. A.R. 4. Plaintiff also submitted a June 27, 2018 court order that changed Plaintiff's name to Oliver Bruce Morris but did not contain a sex designation, A.R. 5, and a September 21, 2018 Nevada driver's license that listed Plaintiff's sex as male, A.R. 3.

In response to Plaintiff's application for a passport card,[2] the Department sent Plaintiff an information request letter on October 24, 2018 that stated, "In order to issue you a passport card reflecting a sex different from the one on some or all of your citizenship and/or identity evidence, please send us a signed original statement on office letterhead from your attending medical physician" indicating "that you have had appropriate clinical treatment for transition to the new sex." A.R. 7; *compare* 8 FAM 403.3-2(B)(a), A.R. 108. After Plaintiff failed to respond to this letter, on January 24, 2019, the Department followed up with Plaintiff through an otherwise identical letter titled "FINAL REQUEST." A.R. 9. That

---

[1] As indicated in Defendant's notice of filing the administrative record, the administrative record has been manually filed with the Clerk of Court. ECF No. 20. A full index and certification of the administrative record are attached to the notice of filing. ECF Nos. 20-1, 20-2.

[2] U.S. passport cards are issued with only a ten-year period of validity and are therefore not available to applicants who present a medical certification of being "in the process" of transition.

**Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A.,** *Morris v. Pompeo***, No. 19-0569**

6

letter stated that unless Plaintiff provided the requested certification within ninety days, the application could be denied. A.R. 9. Plaintiff's counsel responded on February 22, 2019, indicating that Plaintiff would not supply the requested certification because Plaintiff "cannot afford any gender transition treatment right now" and because "he does not need any medical intervention for a gender transition." A.R. 11. On March 26, 2019, the Department sent Plaintiff one last letter requesting the certification within ninety days. A.R. 12–13. This letter once again stated that, with respect to Plaintiff's clinical treatment, the certification need only state that Plaintiff has "had appropriate clinical treatment for transition to the new sex." A.R. 12. Plaintiff did not respond to this letter.

On April 5, 2019, Plaintiff filed the complaint in this action, ECF No. 1, stating that he "cannot afford the cost of any gender transition treatment beyond hormone treatment" and that the requested certification would not be forthcoming. A.R. 14–27. On May 21, 2019, the Department sent Plaintiff a letter formally denying the passport application pursuant to 22 C.F.R. § 51.23. A.R. 28–29.

**III.    Procedural History**

Plaintiff has since amended his complaint. *See* Am. Compl., ECF No. 13. The Court has also resolved a dispute as to the extent of the record, having denied Plaintiff's Motion to Supplement on September 25, 2019. ECF No. 24. Defendant filed the Administrative Record alongside his Opposition to the Motion to Supplement. *See* ECF No. 20. The Court has also determined that this record review case is to be adjudicated through cross-dispositive motions. ECF No. 19. The schedule for those motions is set forth in the Court's July 29, 2019 Scheduling Order. *See id.*

**LEGAL STANDARD**

Defendant moves to dismiss Plaintiff's due process and equal protection claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure and seeks summary judgment on Plaintiff's APA claims under Rule 56.

To defeat a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

**Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A.,** *Morris v. Pompeo*, **No. 19-0569**

7

to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a case involving review of agency action under the APA, however, the district court's role is not to identify genuine disputes of material fact for trial because no trial is anticipated or would be appropriate. *See Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985); *Klamath Siskiyou Wildlands Ctr. v. Gerritsma*, 962 F. Supp. 2d 1230, 1233 (D. Or. 2013). Summary judgment instead "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007).

The legal standard that the Court applies in this case is also affected by the level of deference that the Department is owed in challenges to the denial of passports. With respect to questions of statutory interpretation, "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). And with respect to review under 5 U.S.C. § 706(2)(A)—whether final agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"—courts likewise apply a "deferential standard of review under which the agency's action carries a presumption of regularity." *See San Luis & Delta-Mendota Water Authority v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014). Overlaying all of this is the enhanced deference that courts afford the Department of State in matters of foreign policy and national security. In such areas, "congressional silence is not to be equated with congressional disapproval." *Agee*, 453 U.S. at 291. "*Congress—in the giving Executive authority over matters of foreign affairs—must of necessity paint with a brush broader than that it customarily wields in domestic areas.*" *Id.* at 292 (quoting *Zemel v. Rusk*, 381 U.S. 1, 17 (1965)). Accordingly, "[m]atters intimately related to foreign policy and national security," such as challenges to the Department of State's administration of passports, "are rarely proper subjects for judicial intervention." *Id.*

### ARGUMENT

The Amended Complaint should be dismissed in its entirety. The Court's role in reviewing Plaintiff's APA claims is limited to determining whether the Department reasonably denied Plaintiff's passport based on the evidence before it. It unquestionably did for the simple reason that Plaintiff did not supply sufficient evidence to establish his identity under Department policy. Accordingly, Plaintiff's APA claims fail. Furthermore, the Department did not deny Plaintiff's passport application in violation of

Plaintiff's equal protection or due process rights. Plaintiff has not plausibly alleged that the Department intentionally discriminated against him or that the Department has violated one of his fundamental rights. In fact, the record demonstrates that the Department has struck a balance between accommodating an applicant's request to be issued a U.S. passport with a sex designation that corresponds to their gender transition while maintaining the integrity of passports as a reliable letter of introduction between sovereigns attesting to the identity of the bearer. Accordingly, Plaintiff's constitutional claims fail as well.

## I.    Defendant is Entitled to Judgment as a Matter of Law Regarding Plaintiff's APA Claims.

Plaintiff's first two claims, that the Department's decision was arbitrary and capricious, Am. Compl. ¶¶ 29–35, and exceeded statutory authority, *id.* ¶¶ 36–42, are meritless and should be dismissed. Defendant addresses them in turn below.

### A.    Count I Should Be Dismissed Because the Department's Decision to Deny Plaintiff's Passport Application Was Reasonable, Not Arbitrary or Capricious.

Defendant is entitled to judgment as a matter of law with respect to Plaintiff's arbitrary and capricious claim because the Department's decision to deny Plaintiff's passport application was eminently reasonable. Under the APA, a court may "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In reviewing such a claim, the court's "review is 'narrow;' [it] may not 'substitute [its] judgment for that of the agency.'" *Gill v. DOJ*, 913 F.3d 1179, 1187 (9th Cir. 2019) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009)). Rather, the court must uphold the agency action so long as the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

A rational connection between the facts found and the choice made is readily apparent from the record here. A passport "applicant has the burden of establishing his or her identity." 22 C.F.R. § 51.23(a). As referenced above, if "an applicant indicates a gender on the 'sex' line on the passport application with information different from the one reflected on some or all of the submitted citizenship and/or identity evidence, including a prior passport," then the applicant must submit a "[m]edical certification of gender

**Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A.,** *Morris v. Pompeo*, **No. 19-0569**

9

transition from a licensed physician." *See* 8 FAM 403.3-1(a), (e), A.R. 106. Plaintiff's passport application listed his sex as male, A.R. 1, whereas the birth certificate that he submitted in support of his application listed his sex as female, A.R. 4. Accordingly, he was required to submit a medical certification. Because he did not, the Department denied his application. A.R. 28-29.

A rational connection also exists with respect to the Department's policy. The record indicates that the Department developed this policy based on the WPATH SOC and in consultation with advocates for the transgender community, including Ambassador Guest and the Council for Global Equality. *See* Action Memo for Assistant Secretary Jacobs 1–2, A.R. 31–32. Specifically, based on the SOC's finding that medical professionals play a prominent role in the lives of people with gender identity disorders, SOC 3, A.R. 45, and that every state had a certification procedure for physicians, but not other medical professionals, the Department found that physicians were ideally situated to independently verify the sex designations of applicants whose sex designation on their application is inconsistent with the documentation in support of the application. *See* Dec. 30, 2013 Letter 1, A.R. 85. The record also indicates that the Department considered other options, such as amended birth certificates and court orders, but ultimately concluded that these alternatives were not sufficiently reliable to verify an applicant's sex designation. *See id.* (observing that "amended birth certificates do not indicate what information was changed" and may be obtained using evidence that the Department would ordinarily deem insufficient to obtain a passport).

Plaintiff's allegations in support of his arbitrary and capricious claim do not disrupt the rational connection that is evident from the record. First, Plaintiff alleges that "the Secretary fail[ed] to provide sufficient written notice" of the Department's decision. Am. Compl. ¶ 31. This is not correct. Fifteen days after Plaintiff submitted his application, the Department informed him that he needed to submit the necessary certification in order to be issued a passport in the requested sex designation of male. *See* A.R. 7–8. The Department sent two similar letters before it denied the application, A.R. 9–10, 12–13, and Plaintiff responded to one, A.R. 11. He cannot plausibly allege that he lacked notice of the requirement.

Second, Plaintiff alleges that the "Policy is wholly inconsistent with medical evidence that does not require any medical treatment for gender change and fosters inaccurate information on a passport." Am. Compl. ¶ 32. As discussed above, the only medical evidence in the record, the SOC, indicates just

Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A., *Morris v. Pompeo*, No. 19-0569

10

the opposite: medical professionals play a prominent role in the lives of people with gender identity disorders, SOC 3, A.R. 45. Furthermore, Plaintiff points to no portion of the policy that requires "medical treatment for gender change." Rather, the policy requires a certification from a physician that states that "the applicant has had appropriate clinical treatment for gender transition to the new gender of either male or female," 8 FAM 403.3-2(B)(d)(5), A.R. 109, or is in the process of such transition. 8 FAM 403.3-2(B)(f)(2), A.R. 109. The SOC indicates that medical professionals can be involved with "diagnostic assessment, psychotherapy, real-life experience, hormone therapy, and surgical therapy," SOC 3, A.R. 45, but what treatment is "appropriate" for a particular individual is determined by that individual's physician, not the Department. SOC 2, A.R. 44. Accordingly, the Department does not require any particular treatment, as long as the certifying physician determines that the applicant has received "appropriate clinical treatment." 8 FAM 403.3-2(B)(d)(5), A.R. 109. In fact, the Department would have no way to impose such a requirement under its policy, which expressly provides that medical records regarding gender transition, other than the certification, "must not be requested." 8 FAM 403.3-1(e), A.R. 106.

### B. Count II Should Be Dismissed Because the Department's Decision to Deny Plaintiff's Passport Application Was Well Within Its Statutory Authority.

Second, Plaintiff alleges that the Department exceeded its statutory authority in violation of the APA. *See* Am. Compl. ¶¶ 36–42. This claim is meritless. The Passport Act states, "The Secretary of State may grant and issue passports . . . under such rules as the President shall designate and prescribe for and on behalf of the United States." 22 U.S.C. § 211a. And, "[i]t is beyond dispute that the Secretary has the power to deny a passport for reasons not specified in the statutes." *Agee*, 453 U.S. at 290. One such reason is if the applicant does not establish his or her identity. *See* 22 C.F.R. § 51.23(a). The subchapter of the Foreign Affairs Manual pertaining to gender change is an appropriate application of this principle, requiring independent proof of the sex component of an applicant's identity through the required medical certification. It cannot be seriously contended that this requirement falls outside the "broad and permissive language" of § 211a. *See Agee*, 435 U.S. at 294.

Plaintiff's allegations in support of his statutory authority claim do not come close to stating a claim and are contradicted by the record at any rate. For instance, Plaintiff alleges that "[t]he Secretary engages in an unlawful practice of imposing an inaccurate gender marker on a United States passport for

people such as Oliver." Am. Compl. ¶ 39; *see also id.* ¶ 40 (alleging that "the Passport Act . . . does not expressly or implicitly authorize the Secretary to refuse to issue a passport unless and until the applicant accepts a male or female gender marker inconsistent with that person's gender identity"). But the Secretary has broad statutory authority to prescribe rules for passports, and under those rules Plaintiff may obtain a passport in the sex consistent with his gender transition if he submits the physician's certification that the Department has repeatedly asked of him. *See* A.R. 7–10, 12–13; *see also* 8 FAM 403.3-2(B), A.R. 108–09. Count II is devoid of legal authority or factual support and should be dismissed.

## II. Count III Should Be Dismissed Because Plaintiff Has Failed to State a Due Process or Equal Protection Claim.

The Court should dismiss Plaintiff's constitutional claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff alleges that section 403.3 violates the Due Process Clause because it infringes certain fundamental rights. *See* Am. Compl. ¶¶ 49–50. Plaintiff also alleges that section 403.3 violates the Equal Protection Clause because it "is impermissibly premised on assumptions, expectations, stereotypes, or norms about the nature of sex/gender as capable of change only with intervention from a doctor." Am. Compl. ¶ 52. As explained below, the Court should dismiss this claim because Plaintiff has not plausibly alleged that the Department issued section 403.3 with an intent to discriminate against transgender people. And with respect to Plaintiff's substantive due process claim (and his equal protection claim, to the extent the Court finds it necessary), the Department's justification for section 403.3 easily satisfies rational basis scrutiny, which applies to both claims.

### A. The Court Should Dismiss Plaintiff's Equal Protection Claim Because Plaintiff Has Not Plausibly Alleged That the Department Denied His Passport Application with an Intent to Discriminate against Transgender People.

As a threshold matter, the Court should dismiss Plaintiff's equal protection claim because he has failed to meet his burden of pleading facts rendering it plausible that the Department denied his passport application with an intent to discriminate against transgender people.

First, both the Department's letter denying Plaintiff's passport application and the policy underlying that letter are facially neutral with respect to sex or transgender status. The Department denied Plaintiff's passport application, not because he is transgender, but because Plaintiff failed to provide documentation sufficient to independently verify the sex designation on his passport application such that

**Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A.,** *Morris v. Pompeo***, No. 19-0569**

12

the Department could attest to that element of his identity. *See* May 21, 2019 Letter, A.R. 28. The regulation that places the "burden of establishing his or her identity" on the passport applicant, 22 C.F.R. §51.23(a), applies regardless of an applicant's sex or transgender status. The Department's policy merely particularizes this policy for the case in which the applicant seeks a passport reflecting the sex component that is not established by his birth documentation. Thus, neither the denial letter nor section 403.3 facially treats transgender individuals differently than other similarly situated persons.

Second, Plaintiff has not plausibly alleged facts that would indicate an intent to discriminate against transgender people, as is his burden. A facially neutral policy "is unconstitutional . . . *only* if [a disparate] impact can be traced to a discriminatory purpose," *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979) (emphasis added); *accord id.* at 279 (observing that the fundamental question is whether "the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely 'in spite of,' its adverse effects upon an identifiable group"). The Supreme Court has also made clear that this standard requires a district court to engage in a rigorous analysis at the Rule 12 stage, such that "to state a claim, . . . respondent must *plead sufficient factual matter* to show that petitioners adopted and implemented the . . . policies at issue not for a neutral . . . reason but for the purpose of discriminating . . . ." *Iqbal*, 556 U.S. at 677 (citing *Feeney*, 442 U.S. at 279) (emphasis added). Recognizing that a court should cast a skeptical eye towards such allegations, the Supreme Court has made clear that a district court must "draw on its judicial experience and common sense" to ensure that the plaintiff has identified more than the "mere possibility of misconduct." *Id.* at 679. As part of that common sense analysis, where there is an "obvious alternative explanation" for the challenged conduct, "discrimination is not a plausible conclusion." *Id.* at 682 (quoting *Twombly*, 550 U.S. at 567).

Under *Iqbal*, Plaintiff's threadbare allegations cannot support such a claim. First, Plaintiff asserts, "If Oliver sought a female passport, the Secretary would have issued a ten-year passport card to Oliver." This is true, but not for any discriminatory reason. Once again, the Department requires additional evidence of an applicant's identity if the evidence in support of the application is inconsistent with the application. If Plaintiff applied for a passport that indicated that he was female, such an application would be consistent with the evidence. *See* A.R. 4. Accordingly, no additional evidence would be necessary to independently establish Plaintiff's sex.

Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A., *Morris v. Pompeo*, No. 19-0569

13

Third, Plaintiff circularly asserts that "The Secretary's Policy is impermissibly premised on assumptions, expectations, stereotypes, or norms about the nature of sex/gender as capable of change only with intervention from a doctor," Am. Compl. ¶ 52, and that "[t]he Secretary has excluded Oliver from obtaining a passport because Oliver failed to conform to the sex-based stereotype that individuals who change sex/gender suffer from some mental or physical infirmity," *id.* ¶ 53. These threadbare allegations are precisely the type of allegations that the Supreme Court has held insufficient to support an equal protection claim. *See Iqbal*, 556 U.S. at 677. Plaintiff does not allege any *facts* that plausibly suggest that the Department holds such stereotypes or that it believes that individuals who undergo gender transition have a mental or physical infirmity. The fact of the matter is that the Department holds no such views. Indeed, as set forth above, the Department's policy was developed to help accommodate a person's ability to change his or her sex designation on a passport.

In any event, there is an "obvious alternative explanation" for the policy that plainly reflects no intent to discriminate and is sufficient to defeat Plaintiff's assertions. That is, the Department has created passport application forms and requires certain evidence in support of such applications to ensure the integrity of U.S. passports as proof of identity and citizenship. *See* 22 C.F.R. § 51.20(a); 8 FAM 101.1-1(f) (explaining that "[t]he passport adjudication and issuance processes" serve "[t]o protect the integrity of the U.S. passport as proof of U.S. citizenship/non-citizen U.S. nationality and identity at home and abroad"). Where the applicant requests a passport with biographic information that differs in some way from the acceptable evidence submitted with the application (*e.g.*, where the passport application reflects a different date of birth, name, or sex), the Department requires additional evidence in order to issue the requested passport. For example, if the date of birth on the application is inconsistent with that on the birth certificate, the applicant must supply "an amended birth certificate or, in urgent circumstances when an amended birth certificate is not available, . . . additional evidence or documentation." *See* 8 FAM 403.2-1(a). Or, if there are material discrepancies between the name on the application and the name on the supporting evidence, the applicant must supply certain additional documentation, such as a court order or marriage certificate to establish that the requested name accurately identifies the applicant. *See* 8 FAM 403.1-4(b).

The Department does not treat sex any differently. Any discrepancies in sex designations must be

Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A., *Morris v. Pompeo*, No. 19-0569

14

accompanied by supporting documentation, namely a physician's certification that "the applicant has had appropriate clinical treatment for gender transition to the new gender of either male or female." *See supra* § I.A. The reason that the Department requires additional evidence when the applicant requests that a passport reflect a date of birth, name, or sex that conflicts with the applicant's identity documentation is to ensure the accuracy of U.S. passports. This is all the more apparent in this case, where the Department gave Plaintiff three opportunities to provide evidence of his transition before denying his application for failure to supply the required evidence, A.R. 7–8, 9–10, 12–13, rather than denying his application because he is transgender, A.R. 11.

In sum, Plaintiff has not plausibly alleged that the Department intentionally discriminates against transgender individuals in passport applications. And there is an obvious alternative explanation for section 403.3: to independently verify the applicant's identity. Accordingly, the Court should dismiss Plaintiff's equal protection claim.

### B.    In the Alternative, if the Court Reaches Plaintiff's Constitutional Claims, It Should Apply Rational Basis Review.

Even if the Court were to reach Plaintiff's constitutional claims, it should subject them both to rational basis review and dismiss them on this basis. Because Plaintiff has failed to identify a fundamental right that the Department purportedly violated, his substantive due process claim is subject to rational basis review. Likewise, Plaintiff's equal protection claim should be subject to rational basis review, not heightened scrutiny. In any event, as set forth below, the claims fail under either standard.

### 1.    Rational Basis Review Applies to Plaintiff's Due Process Claim Because No Fundamental Right Is at Issue in this Case.

Plaintiff alleges that the Department violated his "fundamental right to refuse medical treatment and . . . fundamental liberty interest in personal decision- Compl. ¶ 50. Again, the Court should review these claims under rational basis review because they do not implicate fundamental rights.

Substantive due process doctrine "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). By contrast, rational basis making central to individual dignity and autonomy." Am.

review applies to laws that do not infringe on a fundamental right. *See Franceschi v. Yee*, 887 F.3d 927, 939 (9th Cir. 2018). Outside of a handful of rights, the Supreme Court "has always been reluctant to

Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A., *Morris v. Pompeo*, No. 19-0569

15

expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Failure to exercise such restraint would allow "the liberty protected by the Due Process Clause [to] be subtly transformed into the policy preferences of the [courts]." *See Glucksberg*, 521 U.S. at 720.

To determine whether a case presents the rare instance in which a fundamental right is at stake, courts apply a two-part test. First, the plaintiff must establish that the asserted right is "objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Raich v. Gonzales*, 500 F.3d 850, 862 (9th Cir. 2007) (quoting *Glucksberg*, 521 U.S. at 720–21). Second, the plaintiff must provide "a 'careful description' of the asserted fundamental liberty interest." *Id.* (quoting *Glucksberg*, 521 U.S. at 721). On this second prong, "vague generalities . . . will not suffice," *Chavez v. Martinez*, 538 U.S. 760, 776 (2003); "*Glucksberg* instructs courts to adopt a narrow definition of the interest at stake," *Raich*, 500 F.3d at 863. Neither of Plaintiff's asserted rights pass this test.

### i. There Is No Fundamental Right at Issue Here Concerning an Infringement on the Refusal of Medical Treatment.

Plaintiff alleges that the Department has violated his "fundamental right to refuse medical treatment," invoking an 1891 Supreme Court case. As an initial matter, it makes no difference whether rational basis or heightened scrutiny applies to this right because the Department has not prevented Plaintiff from refusing medical treatment. Rather than force Plaintiff to obtain medical treatment, the Department has simply refused to grant him a federal diplomatic communication with his preferred sex designation at this time because of his failure to provide sufficient evidence. Plaintiff appears to believe that the Department has required him "to see a doctor and undergo further treatment" beyond hormone treatment. *See* Am. Compl. ¶ 23. But this is simply incorrect. The Department denied Plaintiff's passport application because the sex listed on his application differed from that listed on his birth certificate, and he failed to provide a medical certification of his transition. *See* May 21, 2019 Letter, A.R. 28. Furthermore, the Department's policy does not impose any substantive requirements for medical treatment to be issued a passport designating a sex that differs from that in the applicant's birth documentation. Rather, "the only documentation of gender change required" to issue the requested passport is a "[m]edical

Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A., *Morris v. Pompeo*, No. 19-0569

16

certification of gender transition from a licensed physician," *See* 8 FAM 403.3-1(a), (e), A.R. 106, stating that "the applicant has had appropriate clinical treatment for gender transition to the new gender of either male or female." 8 FAM 403.3-2(B)(d)(4), (5), A.R. 109. What treatment is "appropriate" in a given case is determined by the certifying physician, consistent with relevant medical practices, standards and guidelines. A.R. 116. The Department does not adjudicate or even consider the basis for the physician's conclusion; indeed, medical records beyond the physician's certification "must not be requested." 8 FAM. 403.3-1(e). Thus, so long as Plaintiff submits such a certification from his physician, *see, e.g.*, 8 FAM 403.3-8, A.R. 114 (providing a model letter), his choice not to pursue "any gender transition treatment beyond hormone treatment" is no barrier to his receiving a passport.

At any rate, the right that Plaintiff invokes is not sufficiently narrow under the second *Glucksberg* prong. *Glucksberg* itself is instructive. There, the Supreme Court rejected the lower court's similarly broad characterization of the right at issue: at stake was not "whether there is a liberty interest in determining the time and manner of one's death," as the Ninth Circuit characterized it, but rather more specifically "whether the 'liberty' specially protected by the Due Process Clause includes a right to commit suicide which itself includes a right to assistance in doing so." *See Glucksberg*, 521 U.S. at 722–23 (quoting *Compassion in Dying v. Washington*, 79 F.3d 790, 801 (9th Cir. 1996)). The Supreme Court has admonished lower courts for broadly defining rights in other contexts as well. *See, e.g.*, *Martinez*, 538 U.S. at 776 (holding that "vague generalities, such as 'the right not to be talked to,' will not suffice" but rather that the Court "must take into account the fact that [the respondent] was hospitalized and in severe pain during the interview, but also that [the respondent] was a critical nonpolice witness to an altercation resulting in a shooting by a police officer, and that the situation was urgent given the perceived risk that [the respondent] might die and crucial evidence might be lost"); *Reno v. Flores*, 507 U.S. 292, 302 (1993) (holding that the right at issue was not "freedom from physical restraint" but rather "the alleged right of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution").

This Court should follow the Supreme Court's instruction and reject Plaintiff's broad "right to refuse medical treatment," Am. Compl. ¶ 47 (citing *Union Pac. R.R. v. Botsford*, 141 U.S. 250, 251–55

**Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A.,** *Morris v. Pompeo*, **No. 19-0569**

17

(1891)). For one, *Union Pacific Railroad* does not even concern the Due Process Clause, but rather concerns the common law power of a trial court to "order the plaintiff without his or her consent, to submit to a surgical examination as to the extent of the injury sued for." 141 U.S. at 251. And to the extent any right could be divined from that case, it would not be a general right to refuse medical treatment—let alone a right to obtain a diplomatic communication from the federal government on one's preferred terms without providing sufficient proof of identity—but rather a right to bring a personal injury suit without the trial court forcing one to submit to surgical examination.

### ii.    There Is No Fundamental Right at Issue Here Concerning an Infringement on Personal Decision Making.

Plaintiff's other asserted right, the "right to existence and self-expression as a person who is transgender" or the "liberty interest in personal decision-making central to individual dignity and autonomy" is similarly too broad to be considered "fundamental" under the Due Process Clause. Indeed, these asserted rights are so broad, Plaintiff does not even cite a case in support of them, perhaps because no court appears to have ever defined so broad a right under the Due Process Clause. Rather, the Supreme Court has repeatedly rejected such "vague generalities." *See Martinez*, 538 U.S. at 776.

At any rate, the Department in no way denied Plaintiff's right to existence when it denied his passport application. In fact, section 403.3 does just the opposite. In developing that section, the Department consulted with and adopted certain recommendations from advocates of the transgender community, such as the Council for Global Equality, the National Center for Lesbian Rights, the National Center for Transgender Equality, and the National Gay and Lesbian Task Force. *See* May 14, 2010 Action Memo, A.R. 31–32; Dec. 8, 2010 Action Memo, A.R. 68–69. The result is a policy that permits applicants to obtain a passport that contains their preferred sex designation and that independently verifies each component of an applicant's identity to ensure that passports remain a reliable "letter of introduction in which the issuing sovereign vouches for the bearer and requests other sovereigns to aid the bearer," *Agee*, 453 U.S. at 292.

Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A., *Morris v. Pompeo*, No. 19-0569

18

1

2

### 2. Rational Basis Review Should Also Apply to Plaintiff's Equal Protection Claim.

3

Rational basis review also applies to Plaintiff's equal protection claim because this suit is not

4

properly characterized as one concerning discrimination on basis of transgender status—even assuming

5

*arguendo* that such discrimination would trigger heightened scrutiny, *see infra* note 3. Plaintiff, a

6

transgender individual, submitted a birth certificate containing a female sex designation, a driver's license

7

containing a male sex designation, and a court order containing a name change but no sex designation.

8

*See* May 21, 2019 Letter, A.R. 28. Plaintiff's documentation, reviewed on its own terms, contains

9

conflicting information regarding the appropriate sex designation, and the Department under those

10

circumstances required additional medical documentation. But to state a claim of discrimination on the

11

basis of transgender status, Plaintiff would need to plausibly allege that a non-transgender (cisgender)

12

individual who submitted a passport application with a sex designation that conflicted with the applicant's

13

birth documentation would not be required to submit additional evidence. There is no suggestion that the

14

Department would not have required additional evidence in this circumstance, and any possibility of

15

disparate treatment is refuted by the Department's regulations, which provide that in all cases the applicant

16

"bears the burden" of establishing his or her sex and warn that the Department will require "additional

17

evidence of identity as it deems necessary." 22 C.F.R. § 51.23(a), (c). Nor, for that matter, is there any

18

suggestion that the Department would have treated any plaintiff differently had the relevant birth

19

certificate contained a male sex designation and the relevant driver's license a female sex designation,

20

thereby foreclosing any argument that the Department's policy discriminates on the basis of sex. In other

21

words, the Department did not deny Plaintiff a passport because of Plaintiff's transgender status, let alone

22

because of Plaintiff's sex, but simply because Plaintiff failed to meet the facially neutral requirements

23

necessary to maintain the integrity of the identification system vital to the purpose of a passport.

24

Even assuming Plaintiff's claim could somehow be characterized as discrimination on the basis of

25

transgender status, rational basis review would still apply to the policy and circumstances presented here.

26

The Department's policy does not foreclose persons who seek to change their sex designation on a passport

27

from doing so but, in fact, seeks to facilitate that action—subject to the submission of adequate

28

documentation to verify the changed sex identity. The purpose of the sex designation on the passport is

**Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A.,** *Morris v. Pompeo*, **No. 19-0569**

19

to help identify the bearer of the document, and thus ensure that the passport remains a reliable proof of identification, not to prevent any person from receiving a passport on the basis of his or her sex.  And because a requirement that persons submit adequate documentation of their identity, including their sex, does not seek to target persons on the basis of sex or transgender status, that policy should be subject to rational basis review.

### C.    The Department's Decision to Deny Plaintiff's Passport Application Satisfies Rational Basis or, in the Alternative, Heightened Scrutiny.

For the above reasons, the Court should apply rational basis review to Plaintiff's equal protection and due process claims. Under that standard, the Court "need only determine 'whether the legislation has a "conceivable basis" on which it might survive constitutional scrutiny.'" *Franceschi*, 887 F.3d at 939 (quoting *Dittman v. California*, 191 F.3d 1020, 1031 (9th Cir. 1999)) (describing rational basis review). However, even if the Court chooses to apply heightened scrutiny, the Department's decision passes muster.[3]

First, the Department has identified at least an "important governmental objective," *Boren*, 429 U.S. at 197; *Virginia,* 518 U.S. at 533. Issuing passports that accurately state the bearer's identity is a governmental interest of paramount importance. The Supreme Court has long observed that a passport is "a letter of introduction in which the issuing sovereign vouches for the bearer and requests other sovereigns to aid the bearer." *Agee*, 453 U.S. at 292. As such, it "is both proof of identity and proof of allegiance to the United States." *Id.* at 293. Accordingly, the United States must assure itself, when

---

[3]  To withstand constitutional challenge, sex-based classifications must serve important governmental objectives and must be substantially related to achievement of those objectives.  *Craig v. Boren*, 429 U.S. 190, 197 (1976); *see also United States v. Virginia,* 518 U.S. 515, 533 (1996) (to withstand equal protection scrutiny, a sex-based classification must serve "important governmental objectives" and the discriminatory means employed must be "substantially related to the achievement of those objectives."); *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 60–61 (2001).  In still-pending litigation challenging the military's policy imposing some limitations on military service by persons with gender dysphoria, the Ninth Circuit held that the district court should apply a standard of review that is "more than rational basis but less than strict scrutiny" to an equal protection claim.  *See Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019).  The Government maintains that rational basis review should have been applied in that case, which is not yet concluded.  *See also, e.g.*, *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1227-28 (10th Cir. 2007) (classifications on the basis of transgender status do not trigger heightened scrutiny).  In any event, as explained above, the policy at issue here does not deny a passport to anyone on the basis of sex or transgender status.

---

**Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A.,** *Morris v. Pompeo*, No. 19-0569

20

"attesting to the identity and nationality" of a passport holder, 22 C.F.R. § 51.1, that the applicant has indeed supplied sufficient "proof of identity" that the Department can make that attestation. *Id.*

Second, the Department's requirement that Plaintiff submit a certification as proof of identity is at least "substantially related to achievement of [the Government's] objective," *Boren*, 429 U.S. at 197; *see Virginia,* 518 U.S. at 533. To assure that the Department accurately vouches for a passport bearer's identity, each aspect of the passport must be supported by independent evidence (*i.e.*, evidence beyond what the applicant states in their application). For example, the Department does not rely solely on an applicant's assertion that they are a U.S. citizen; rather, an "applicant must submit acceptable evidence of U.S. citizenship or non-citizen U.S. nationality." 8 FAM 403.3-2(A)(a), A.R. 107. Nor does the Department blindly accept the name in which an applicant applies; rather, the applicant must supply evidence of either a legal name change or exclusive "customary usage" of the requested name over a period of at least five years. 8 FAM 403.1-4; 403.1-4(D). Likewise, the Department cannot take applicants at their word when they state that they are male or female. To do so would contravene the purpose of a passport, to establish "proof of identity" to foreign sovereigns. *Agee*, 453 U.S. at 293.

Plaintiff does not appear to contest that the Department may independently verify an applicant's sex. Instead, he appears to argue that the Department has violated the Constitution because it requires a certification rather than another type of evidence, such as his driver's license. *See, e.g.*, Am. Compl. ¶¶ 16, 54 (alleging that the Department demanded that he visit a doctor). But the record supports the Department's judgment that the certification is the best form of evidence to independently verify the sex of applicants whose preferred sex designation is inconsistent with their proof of identity. The SOC indicates that medical professionals have an important role to play in providing care for persons with gender identity disorders. *See* SOC 3, A.R. 45. For example, in "fully adopting a new or evolving gender role or gender presentation in everyday life," the SOC observes that "[p]rofessionals have a responsibility to discuss [personal and social consequences] with their patients." SOC 17, A.R. 59. As such, the Department determined that physicians, one of the few medical professionals that every state certifies, are uniquely situated to independently verify the sex designation of applicants seeking a sex designation on their passports that differs from their supporting documentation. *See* Dec. 30, 2013 Letter 1, A.R. 85.

The inadequacy of alternative forms of evidence demonstrates why the certification is at least

Def.'s Mot. Dismiss, Mot. Summ. J. & Mem. P. & A., *Morris v. Pompeo*, No. 19-0569

21

substantially related to the Department's interest in independent verification of an applicant's identity. The record demonstrates that the Department has been presented with two alternative options as proof of the sex component of identity: an amended birth certificate and a court order of sex/gender change. *See* A.R. 91. However, the record also demonstrates that neither of these options are adequate forms of evidence of the sex of a passport applicant.[4] The Department observed that "many amended birth certificates do not indicate what information was changed and an amended change (such as a change in a date of birth, place of birth or parents' information) may affect the bearer's entitlement to a U.S. passport or ability to transmit U.S. citizenship derivatively to a child." Dec. 30, 2013 Letter 1, A.R. 85. The Department also reasoned, "because of the different laws and regulations in place for each state, if [the Department] accepted only an amended birth certificate for gender transition purposes or a court order, [the Department] would be forced to accept vital records amended by states using evidence the Department would not accept otherwise." *Id.* Under these circumstances, a requirement that an applicant submit a physician's certification is not only rational, but is substantially related to furthering the Department's important interest in reliably verifying the sex component of an applicant's identity where it differs from the designation on the applicant's birth documentation. As such, the Court should dismiss Plaintiff's constitutional claims even if it chooses to apply heightened scrutiny.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motion and dismiss the Amended Complaint.

Dated: November 12, 2019                    Respectfully Submitted,

                                            JOSEPH H. HUNT
                                            Assistant Attorney General

                                            ANTHONY J. COPPOLINO
                                            Deputy Director

                                            /s/ *Benjamin T. Takemoto*
                                            BENJAMIN T. TAKEMOTO
                                            (DC Bar # 1045253)
                                            Trial Attorney
                                            United States Department of Justice

---

[4] Plaintiff has not submitted either of these documents; the only document in the record that identifies Plaintiff as male is a driver's license. Am. Compl. ¶ 16; A.R. 3. The record includes a court order changing his name, but not his sex. A.R. 5.

Civil Division, Federal Programs Branch
P.O. Box 883, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2019, I electronically filed and served the foregoing Motion to Dismiss, Motion for Summary Judgment, and Memorandum of Points and Authorities with the Clerk of Court for the United States District Court for the District of Nevada using the CM/ECF system.

/s/ *Benjamin T. Takemoto*
BENJAMIN T. TAKEMOTO
(DC Bar # 1045253)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov