UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

OLIVER BRUCE MORRIS,

         Plaintiff,

vs.

MICHAEL L. POMPEO,

         Defendant.

Case No.: 2:19-cv-00569-GMN-DJA

ORDER

Pending before the Court are the Motion to Dismiss, (ECF No. 25), and the Motion for Summary Judgment, (ECF No. 26), filed by Defendant Michael L. Pompeo, United States Secretary of State ("Defendant"). Plaintiff Oliver Bruce Morris ("Plaintiff") filed a Response, (ECF No. 28), and Defendant filed a Reply, (ECF No. 30).

Also pending before the Court is Plaintiff's Motion for Summary Judgment, (ECF No. 27). Defendant filed a Response, (ECF No. 29), and Plaintiff filed a Reply, (ECF No. 31).

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss. The Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Summary Judgment. The Court **DENIES as moot** Defendant's Motion for Summary Judgment.

I.        <u>**BACKGROUND**</u>

This case arises from Defendant's denial of Plaintiff's passport application because of Plaintiff's failure to submit a doctor's certification of his gender. (*See generally* Am. Compl., ECF No. 13). Plaintiff, previously named Chanesse Olivia Morris, was born in Modesto, California in 1993; his birth certificate states his birth sex as female. (Am. Compl. ¶ 15); (Birth Certificate, AR 4). Plaintiff is a transgender male who began identifying as male in January of 2015, and he legally changed his name to Oliver Bruce Morris on August 21, 2018. (Am.

Compl. ¶ 16); (Court Ordered Name Change, AR 5–6). Plaintiff alleges that he has health insurance under a policy with Anthem Health Insurance, but the policy does not cover gender reassignment surgery. (Am. Compl. ¶¶ 17–18). As an alternative, Plaintiff alleges that he receives hormone therapy treatment provided by a nurse practitioner, which his health insurance covers; however, he allegedly cannot afford additional gender transition treatment. (*Id.* ¶¶ 17–18, 20, 23).

Plaintiff applied for a 10-year United States Passport on or about October 13, 2018. (*See* Am. Compl. ¶ 19); (Passport Application, AR 1–6). On the application's checkbox for "Sex," Plaintiff checked the "M" box, indicating male. (*Id.* at 1). Plaintiff included three identity documents in his application: a Nevada driver's license, which indicates his sex is male; an original copy of his birth certificate, which indicates his sex is female; and a court-ordered name change, indicating that he legally changed his name from "Chanesse Olivia Morris" to "Oliver Bruce Morris" on June 27, 2018. (*Id.* at 3–6).

U.S. citizens generally must have a passport to travel internationally. 8 U.S.C. § 1185(b). Passports both serve as an official travel identification document and a diplomatic "letter of introduction in which the issuing sovereign vouches for the bearer and requests other sovereigns to aid the bearer." *Haig v. Agee*, 453 U.S. 280, 292 (1981); *see also* 22 C.F.R. § 51.1 (defining "Passport"). The Executive Branch has broad authority to regulate the issuance of passports, which the President has delegated to the Secretary of State. *See Zemel v. Rusk*, 381 U.S. 1, 10 (1965); 22 U.S.C. § 211a; Exec. Order No. 11295, 31 Fed. Reg. 10,603 (Aug. 9, 1966); 22 C.F.R. §§ 51.1–51.74.

Before a U.S. passport can be issued, a citizen seeking a first-time passport or changing a gender on an existing passport must complete the four-page Application for a U.S. Passport, Form DS-11 (06-2016) ("Application"). The applicant "shall subscribe to and submit a written application which shall contain a true recital of each and every matter of fact which may be

required by law or by any rules authorized by law to be stated as a prerequisite to the issuance of any such passport." 22 U.S.C. § 213.  Each applicant "has the burden of establishing his or her identity . . . .  by the submission of a previous passport, other state, local, or federal government officially issued identification with photograph, or other identifying evidence which may include an affidavit of an identifying witness." 22 C.F.R. § 51.23(a)–(b).  The State Department may also require "additional evidence of identity as it deems necessary." 22 C.F.R. § 51.23(c).  The many facets of "identity" included within the Application comprise one's: name, date of birth, sex, place of birth, social security number, parents' names and places of birth, marital status, employment, height, hair color, and eye color. (*See* Passport Application, AR 1–3).

Relevant to this case is the sex identifier on the Application, which, according to the State Department's Foreign Affairs Manual ("FAM"), also describes the applicant's gender.[1] *See* FAM 403.3-2.  If an applicant requests a gender designation different than the sex of his birth, the applicant must submit a doctor's certification that indicates, "the applicant has had appropriate clinical treatment for gender transition to the new gender of either male or female." 8 FAM 403.3-2(A)(b); 8 FAM 403.3-2(B)(d)(5).  For applicants "who have just begun and may be in the initial stages of the gender transition process, a two year limited validity passport" will be available. 8 FAM 403.3-2(B)(f).

On October 24, 2018, the State Department sent a letter in response to Plaintiff's passport application, requesting that Plaintiff verify his sex. (October 24, 2018 Letter, AR 7–8). The letter explained, "[i]n order to issue you a passport card reflecting a sex different from the

---

[1] The Court notes that while passports themselves designate only a "Sex" identifier and not gender, the State Department's Foreign Affairs Manual discusses passport applicants' change of gender rather than change of sex. *See* 8 FAM 403.3-3 (titled "Adjudicating Gender Change or Transition").  While sex and gender are distinct concepts, the distinction—and the State Department's conflation of the concepts—has no impact on the Court's analysis in this Order. *Contra Doe v. Shanahan*, 917 F.3d 694, 696 (D.C. Cir. 2019) (defining sex and gender while noting that the distinction is "critically important" to the court's analysis).

one on some or all of your citizenship and/or identity evidence, please send us a signed original statement on office letterhead from your attending medical physician." (*Id.*). The letter enumerated the information Plaintiff's physician would have to certify under penalty of perjury, including, "[l]anguage stating that you have had appropriate clinical treatment for transition to the new sex[.]" (*Id.* at 7). On January 24, 2019, the State Department sent another letter, labeled "FINAL REQUEST," seeking the same certification. (January 24, 2019 Letter, AR 9–10). Plaintiff, through counsel, replied to the letter by explaining he would not provide the requested certification because he could not afford gender transition treatment, and the requirement violated his constitutional rights. (Nevada Legal Services Letter, AR 11). On March 26, 2019, the State Department sent Plaintiff another "FINAL REQUEST," again reiterating its certification requirement. (March 26, 2019 Letter, AR 12–13). On May 21, 2019, the State Department sent Plaintiff a letter denying his passport application because of his failure to provide a doctor's certification of his sex. (Denial Letter, AR 28).

On April 5, 2019, Plaintiff commenced this action by filing the Complaint against Defendant. (*See* Compl., ECF No. 1). Plaintiff later amended his Complaint as a matter of right. (*See* Am. Compl., ECF No. 13); *see also* Fed. R. Civ. P. 15(a)(1)(B). The Amended Complaint alleges that Defendant denied Plaintiff's passport application in violation of the Administrative Procedure Act ("APA") and Plaintiff's Fifth Amendment equal protection and due process rights. (*See generally* Am. Compl., ECF No. 13). On November 12, 2019, Defendant moved for summary judgment on Plaintiff's APA claims and moved to dismiss Plaintiff's Fifth Amendment claims. (*See* Def.'s Mot. Summ. J. ("MSJ"), ECF No. 26); (Mot. Dismiss ("MTD"), ECF No. 25). Plaintiff seeks summary judgment on each of the claims raised in the Amended Complaint. (Pl.'s MSJ, ECF No. 27).

//
//

## II.         LEGAL STANDARD

### A. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.3d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgement. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

*Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgement. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**B.  Summary Judgment**

i.  <u>Rule 56</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal

purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go

beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

      ii.    <u>APA</u>

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp.*, 477 U.S. at 325. In APA actions, however, the court's review is based on the agency's administrative record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883–84 (1990). The court's role is to determine whether the agency's record supports the agency's decision as a matter of law under the APA's arbitrary and capricious standard of review. *See Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994) ("[T]his case involves review of a final agency determination under the [APA]; therefore, resolution of this matter does not require fact finding on behalf of this court. Rather, the court's review is limited to the administrative record. . . ."); *see also Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985).

**III.**    **DISCUSSION**

Plaintiff's Amended Complaint alleges that Defendant's denial of Plaintiff's passport application: (1) was arbitrary and capricious in violation of the APA, 5 U.S.C. § 706(2)(A); (2) exceeded Defendant's authority in violation of the APA, 5 U.S.C. § 706(2)(C); (3) violates Plaintiff's substantive due process rights guaranteed under the Fifth Amendment of the United States Constitution; and (4) violates Plaintiff's equal protection rights guaranteed under the

Fifth Amendment of the United States Constitution. (Am. Compl. ¶¶ 29–54).  Specifically, Plaintiff's challenge concerns 8 FAM 403.3-2(B) (the "Policy"), which requires a doctor to certify a transgender passport applicant's change of gender before the State Department will issue the applicant a passport with a gender different from the sex noted on the applicant's original birth certificate. (*Id.* ¶¶ 10–12, 31, 41, 48–50, 51, 53–54).  Defendant moves to dismiss Plaintiff's constitutional claims, arguing that the Amended Complaint does not sufficiently allege that Defendant burdened a fundamental right of Plaintiff or discriminated against Plaintiff on the basis of his transgender status, and the Policy survives under rational basis review or heightened scrutiny. (MTD 15:21–22:16, ECF No. 25).  Defendant moves for summary judgment on Plaintiff's APA claims, arguing that the facts in the record indicate that Defendant's decision was neither arbitrary and capricious, nor outside the purview of his delegated authority. (Def.'s MSJ 8:1–22, 9:11–12:7, ECF No. 26).  The Court begins its discussion with Plaintiff's due process claim.

### A. Due Process

Plaintiff's Amended Complaint alleges Defendant violated Plaintiff's substantive due process right to refuse medical treatment by requiring Plaintiff to receive treatment from a physician before issuing him a passport that reflects his gender identity. (Am. Compl. ¶¶ 47, 50).[2]  Defendant moves to dismiss Plaintiff's due process claim because the Amended Complaint fails to plausibly allege that the Policy violates Plaintiff's right to refuse medical treatment. (MTD 15:19–18:7).  The Court finds that Plaintiff's claim fails to allege that the

---

[2] Plaintiff's Amended Complaint also asserts that Defendant's gender certification requirement interferes with Plaintiff's fundamental dignity and autonomy to express his personal identity. (Am. Compl. ¶¶ 49–50). Defendant moves to dismiss this incarnation of Plaintiff's due process claim as well. (MTD 16:8–18:25). However, the Court need not reach this version of the claim, as Plaintiff waived it by failing to raise it in his Motion for Summary Judgment. *See, e.g.*, *Desert Protective Council v. United States DOI*, 927 F. Supp. 2d 949, 978 (S.D. Cal. 2013) ("Since Plaintiffs have failed to raise these issues in their motion for summary judgment and do not oppose or address this issue, these claims should be considered abandoned.").

Policy violates a fundamental right and that the Policy would fail to survive rational basis review.

The Constitution's substantive guarantee to due process of law protects "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed[.]" *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (internal quotations and citations omitted) (quoting *Moore v. East Cleveland*, 431 U.S. 494, 503 (1977) and *Palko v. Connecticut*, 302 U.S. 319, 325–26 (1937)).  The party asserting the due process violation must provide a "careful description" of the asserted liberty interest, and "vague generalities . . . will not suffice." *Chavez v. Martinez*, 538 U.S. 760, 775–76 (2003) (internal quotations omitted) (quoting *Glucksberg*, 521 U.S. at 721).

Here, Plaintiff alleges that he has a fundamental right to refuse medical treatment, which Defendant violated by refusing to issue Plaintiff a passport reflecting Plaintiff's gender identity without a corroborating doctor's certification. (Am. Compl. ¶¶ 47, 50).  Defendant argues that he has not forced Plaintiff to seek medical treatment; rather, he is refusing to grant Plaintiff a passport indicating that Plaintiff's gender is male without appropriate evidence corroborating his gender identity. (MTD 16:14–19:9).  The Court finds that the State Department's Policy does not implicate Plaintiff's right to refuse medical treatment.

Even if a "careful description" of the right at issue is the right to refuse medical treatment[3], Plaintiff is not required to undergo medical treatment to receive a passport.  Each of the cases Plaintiff relies upon in his Motion addresses whether the Government may force an individual to undergo a medical procedure without the individual's consent. (*See* Pl.'s MSJ

---

[3] A more careful description of the right at issue more aptly seems to be the right of a passport applicant to have his gender identity on his passport without a doctor's certification.  Irrespective of the description of the right, the Court finds that Plaintiff's due process challenge proceeds under rational basis review.

9:10–15:22); (Pl.'s MTD Resp. 5:7–7:2, ECF No. 28); *Glucksberg*, 521 U.S. at 720 (explaining that individuals generally have a fundamental right to refuse life-saving medical treatment); *Cruzan v. Mo. Dep't of Health*, 497 U.S. 261, 279 (1990) (explaining that competent individuals generally have a fundamental right to refuse life-saving hydration and nutrition); *Union P.R. Co. v. Botsford*, 141 U.S. 250, 251–55 (1891) (denying a physician examination of a non-party in a civil case without statutory authority authorizing the examination); *Fong Sik Leung v. Dulles*, 226 F.2d 74, 76–77 (9th Cir. 1955) (holding that a Court cannot compel a blood test from either a party or non-party in the absence of a physical examination ordered under Federal Rule of Civil Procedure 35); *Terry v. Ohio*, 392 U.S. 1 (1968) (assessing the permissibility of stop-and-frisk policies under the Fourth Amendment); *McKay v. Bergstedt*, 801 P.2d 617, 622 (Nev. 1990) (finding an individual has a due process right to refuse life-saving medical treatment).

There is no forced medical procedure at issue in this case. Rather, the State Department requires that a physician verify a person's gender identity once the person *elects* to identify by his or her gender—if the gender diverges from the sex of the person's birth—before issuing the individual official government identification reflecting the gender as the person's sex. *See* 8 FAM 403.3-1(b). The record indicates that a transgender person may otherwise receive a passport that reflects the anatomical sex listed on his birth certificate instead of his gender identity. *See generally* 8 FAM 403.3 (entitled "Gender Change" and implying that the policy only applies if the applicant requests identification by the "new gender"); (*see* Denial Letter, AR 28) (explaining the sex-certification requirement applies where the requested sex differs from that listed on one's birth certificate); (*see also* Am. Compl. ¶ 24) (alleging that, "[i]n a phone conversation on March 25, 2019, the State Department . . . verified that, if Oliver requested a passport card with a female sex/gender, he would receive it."). Accordingly, given that Plaintiff may receive a passport without a doctor's certification, the Policy does not

implicate Plaintiff's fundamental right to refuse medical treatment implicit in the Fifth Amendment's Due Process Clause.

Therefore, because Plaintiff has not shown that the Policy implicates a fundamental right, Plaintiff's due process claim is subject to rational basis review. *See Kim v. United States*, 121 F.3d 1269, 1273 (9th Cir. 1997). Under rational basis review, "[i]f a statute is not arbitrary, but implements a rational means of achieving a legitimate governmental end, it satisfies due process." *Id.* (internal quotations omitted) (quoting *United States v. Alexander*, 48 F.3d 1477, 1491 (9th Cir. 1995)). Here, Defendant asserts an interest in using passports to accurately verify the identities of U.S. citizens to foreign sovereigns. (MTD 20:14–21:14). The Policy is rationally related to that end because doctors often play an important role in gender transition treatment, and doctors therefore can verify an individual's gender identity after overseeing transition treatment. (*See* The Harry Benjamin International Gender Dysphoria Association's Standards of Care for Gender Identity Disorders, Sixth Ed., AR 43–64) (emphasizing physicians' roles in treating transgender individuals with gender dysphoria) (Letter from Brenda S. Sprague, Deputy Asst. Sec'y for Passport Serv. to Harper Jean Tobin, Dir. Of Policy, Nat'l Ctr. For Transgender Equal., AR 86) (explaining that the length of transition is a decision between a doctor and transitioning patient, which shows the doctor's need to certify that an individual has completed his or her transition to the new gender). The Court therefore finds that the Policy is rationally related to a legitimate government interest. Given that the Court concludes the Policy does not offend the right to refuse medical treatment implied within the Fifth Amendment's Due Process Clause, the Court dismisses the claim with prejudice and denies Plaintiff summary judgment with respect to the claim. The Court next addresses Plaintiff's equal protection claim.

//

//

B.      Equal Protection

Plaintiff argues that the State Department's Policy violates his Fifth Amendment equal protection rights by subjecting him to an increased burden to verify his gender that similarly situated cisgender passport applicants do not face. (*See* Am. Compl. ¶¶ 51, 53); (Pl.'s MSJ 19:4–21:5). Plaintiff asserts both a facial and as-applied challenge to the State Department's gender certification Policy. (*Id.*). Defendant, moving to dismiss, argues that: (1) the Court should dismiss the claim because Plaintiff has not plausibly alleged discriminatory intent against transgender applicants; and (2) even if Plaintiff has sufficiently alleged discriminatory intent, the Policy survives under either rational basis review or heightened scrutiny. (MTD 12:19–15:12, 19:1–22:16). The Court first addresses Defendant's Motion to Dismiss the claim.

i.      Defendant's Motion to Dismiss

Defendant argues that Plaintiff's equal protection claim should be dismissed because the Amended Complaint fails to allege sufficient facts indicating that Defendant promulgated the policy to intentionally discriminate against transgender applicants. (MTD 12:19–15:12). Defendant argues that if the Court reaches the constitutional analysis regarding the claim, rational basis review should apply and save the Policy. (*Id.* 19:1–20:5). The Court denies Defendant's Motion to Dismiss because the Policy's text categorically treats transgender and cisgender passport applicants differently, and the Court cannot grant dismissal because Defendant bears the burden to establish that the Policy survives heightened scrutiny.

While the Fifth Amendment does not contain an explicit admonition that the federal government shall deprive no person of equal protection of the laws, "th[e] [Supreme] Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *See Adarand Constructors v. Pena*, 515 U.S. 200, 217 (1995) (quoting *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)). "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted).  If a law categorically treats a suspect class differently from other similarly situated persons, then the court applies heightened scrutiny to the law and the plaintiff need not prove intentional discrimination. *See Craig v. Boren*, 429 U.S. 190, 197–98 (1976).  However, if a policy appears facially neutral, the plaintiff must present evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239–40 (1976).  "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis and citation omitted).

The Policy plainly distinguishes between transgender passport applicants and cisgender passport applicants.  While the policy itself does not use the term "transgender," it requires a doctor's certification of the applicant's gender if the individual "has had appropriate clinical treatment for gender transition to the new gender of either male or female." 8 FAM 402.3-2(B). Any person who has undergone a "gender transition" to a new gender is, by definition, transgender.  Therefore, the policy only applies to transgender passport applicants.[4][5]  As

---

[4] More specifically, the policy only applies to transgender passport applicants who have received some form of clinical treatment for gender transition.  Transgender passport applicants who have received no such treatment apparently have no mechanism for their passports to reflect their gender identities.

[5] Defendant argues that similarly situated passport applicants—cisgender individuals whose sex is misidentified on their birth certificate—have a similar burden to prove their sex or gender identity, which demonstrates that the Policy is not facially discriminatory. (*See* MTD 19:9–17).  Even if Defendant has correctly identified the class of similarly situated persons, his argument is unpersuasive for several reasons.  First, misgendered cisgender applicants have a far lower burden than transgender applicants to verify their identities.  They can submit a corrected birth certificate, but transgender persons may not submit an amended birth certificate if the issuing state allows such an amendment. *Compare* 8 FAM 403.3-7(b); *with* Note to 8 FAM 403-3-2(A)(a).  If the cisgender person's departure is imminent and there is not time for the state to correct his or her birth certificate, he or she may receive a one-year limited validity passport without a physician's corroboration of gender, but there is no similar policy for transgender applicants. 8 FAM 403.3-7(b).  Critically, at no point do cisgender persons require a doctor's certification of their gender even if misgendered on their identification.  Second, even if misidentified cisgender persons are subject to some requirements to verify their gender identities, the

applied to Plaintiff, the Policy discriminates against Plaintiff because he is a transgender man who cannot supply the required physician certification as he has undergone hormone therapy administered by a nurse practitioner, and there is no indication his transition has been overseen by a physician. (*See* Nevada Legal Services Letter, AR 11). If Plaintiff were cisgender, he would not have to verify his gender identity beyond the submission of consistent identification corroborating his gender.[6] 8 FAM 403.3-2(A)(b). Therefore, the policy discriminates against Plaintiff on the basis of his transgender status, and the policy is thus subject to "something more than rational basis but less than strict scrutiny[.]" *Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019) (analyzing a ban on military service for transgender persons or persons suffering from gender dysphoria and finding that discrimination against transgender persons qualifies as discrimination on the basis of sex that triggers heightened scrutiny).

Under heightened scrutiny, Defendant bears the burden of establishing that "the policy 'significantly furthers' the government's important interests, and that is not a trivial burden." *Id.* at 1202 (internal quotations omitted) (quoting *Witt v. Dept. of the Air Force*, 527 F.3d 806, 821 (9th Cir. 2008)). Given that the Court only assesses a motion to dismiss based upon the sufficiency of the facts alleged in a plaintiff's complaint, but Defendant cannot satisfy his burden to demonstrate that the Policy survives heightened scrutiny at the motion to dismiss stage, the Court cannot grant dismissal of Plaintiff's Amended Complaint. *See, e.g.*, *Hassan v. City of New York*, 804 F.3d 277, 306 (3d Cir. 2015) ("But because heightened scrutiny applies in this case, we cannot accept the City's invitation to dismiss Plaintiffs' Complaint based on its

---

requirements are not constitutionally dubious because there is no suspect classification raised by the requirements.

[6] Here, Plaintiff has a birth certificate identifying his sex as male, but the State Department will not accept birth certificates issued after a person has undergone a gender transition. (*See* Court Ordered Name Change, AR 5) (checking the box that a new birth certificate shall be issued); Note to 8 FAM 303.3-2(A)(a) ("An amended birth certificate in the new gender is not acceptable evidence of gender change[.]")

assurance that the Program is justified by national-security and public-safety concerns.  Rather, the burden of producing evidence to overcome heightened scrutiny's presumption of unconstitutionality is that of the City, and must be met *after* its Motion to Dismiss.") (emphasis original) (internal quotation and citation omitted).  Thus, the Court denies Defendant's Motion to Dismiss with respect to Plaintiff's equal protection claim.  The Court next assesses Plaintiff's Motion for Summary Judgment regarding his as-applied equal protection challenge.

                ii.    <u>Plaintiff's Motion for Summary Judgment</u>

The remaining question for the Court is whether Defendant has met his burden to demonstrate that the Policy survives intermediate scrutiny.  The Court finds that Defendant has provided no evidence demonstrating that the State Department has an important interest in verifying a passport applicant's gender identity or that the Policy significantly furthers the interest.

At summary judgment, the Court cannot assume that the Government has a substantial interest in a policy that discriminates against a suspect class; rather, the Government "must establish 'an exceedingly persuasive justification' for the classification." *United States v. Virginia*, 518 U.S. 515, 523, 532–33 (1996) (quoting *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982)).  The justification may not rely upon "overbroad generalizations" about the legitimate differences between the suspect class and similarly situated persons. *Id.* at 533.  Instead, facts in the record—as opposed to the proponent's assertions—must demonstrate that the classification is exceedingly persuasive. *See id.* at 562 (Rehnquist, C.J., Concurring)  ("I agree with the Court that there is scant evidence in the record that [diverse options in education, including single-sex institutions] was the real reason that Virginia decided to maintain VMI as men only.").

This Court's decision is one based on the law and not policy: in this specific case, Defendant has failed to meet his burden at summary judgment.  As explained above, Defendant

has a burden to *present evidence* demonstrating the importance of its interest, and that the Policy significantly furthers that interest.  Although the Court ultimately rules for Plaintiff in this case, the Court's decision should in no way be construed to mean that the State Department cannot meet its burden to justify the Policy requiring a doctor's certification of gender for transgender passport applicants.  Rather, only with respect to this Plaintiff's equal protection challenge, the Government has failed to meet its burden in this case.

      Here, the Government frames its purported interest too broadly and fails to provide evidence that the interest is exceedingly persuasive.  Defendant asserts interests in verifying passport applicants' identities and "[i]ssuing passports that accurately state the bearer's identity[.]" (MTD 19:27–20:2, 20:14–16).  There is little doubt that the State Department has an interest in accurately representing the identities of U.S. citizens to foreign nations.  However, the only facet of identity at issue here is a passport applicant's sex or gender.  Defendant has provided no explanation, let alone any evidence, of why the State Department has an important interest in verifying a transgender passport applicant's gender identity, nor a cogent explanation of why the Policy requiring a physician's certification increases the accuracy of issued passports.  Assuming, *arguendo*, that Defendant has a substantial interest in verifying transgender applicants' gender identities, he has not shown why a doctor's certification substantially furthers the interest with respect to transgender applicants given that not all transgender persons receive or require physician treatment. (*See* Memorandum from Jean Tobin, Director of Policy for the National Center for Transgender Equality, Recommended Revisions to 7 FAM 1300 Appendix M, Gender Change, AR 87–89) (explaining that "[p]ermitting certifications from licensed non-physician providers is particularly important because many transgender people do not have regular access to a doctor — and those who do often find it much more difficult to discuss transgender-related issues with their doctor than with a mental health provider.").  Therefore, as Defendant has failed to meet his burden to

demonstrate that verifying transgender passport applicants' gender identities is an important government interest, the Court must grant Plaintiff summary judgment.

Given that Plaintiff has prevailed on his equal protection claim, the Court orders Defendant to review Plaintiff's passport application without requiring a physician's certification of Plaintiff's gender. If Plaintiff's application is otherwise sufficient under the relevant State Department regulations, Defendant shall issue Plaintiff a 10-year passport. As the Plaintiff has succeeded on his as-applied challenge, the Court declines to address whether the Policy is facially unconstitutional. The Court next addresses Plaintiff's APA claims.

### C.  APA

The Court need not reach a conclusion regarding Plaintiff's APA claims. Were the Court to grant Plaintiff relief, the remedy would instruct the Department of State to reconsider Plaintiff's passport application based on the Court's guidance regarding the deficiencies of the Department's previous reasoning. Here, given that the remedy ordered under Plaintiff's equal protection claim is essentially the same as a remedy ordered under the APA, the Court's Order renders Plaintiff's APA claims moot. The Court therefore denies the parties' Cross-Motions for Summary Judgment regarding the claims.

//
//
//
//
//
//
//
//
//

IV.     CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 25), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 26), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 27), is **GRANTED in part** and **DENIED in part**.

The Clerk of Court shall close the case and enter judgment accordingly.

**DATED** this __23__ day of November, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court